<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CENTER FOR ORTHOPEDICS AND SPORTS MEDICINE, <br><br> *Plaintiff*, <br><br> v. <br><br> HORIZON; ABC BENEFIT PLANS 1-10; and JOHN/JANE DOES INC./LLC 1-10, <br><br> *Defendants*. | Civil No.: 13-1963 (KSH) (CLW) <br><br><br> <u>Opinion</u> |

**Katharine S. Hayden, U.S.D.J.**

**I.     Introduction**

Center for Orthopedics and Sports Medicine ("Center") sued Horizon in state court, bringing claims for breach of contract and violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*  (D.E. 1-1 ("Compl.").)  Horizon removed the lawsuit to this Court pursuant to 28 U.S.C. § 1441, relying on its federal question jurisdiction under 28 U.S.C. § 1331.  (D.E. 1.)  Both parties have filed competing motions for summary judgment, which are now before the Court.  (D.E. 18; D.E. 21.)  As set forth below, both motions will be granted in part and denied in part.

**II.    Background**

Center is a health services provider located in Toms River, New Jersey, and Horizon is a "not-for-profit health services corporation" with a principal place of business in Newark, New Jersey.  (D.E. 17 ("Joint Statement of Undisputed Facts"), ¶¶ 1, 2.)  Two physicians associated

with Center, Dr. Daniel Fox, a primary surgeon, and Dr. Manooj Prasad, an assistant surgeon, performed right elbow surgery on Adam M.,[1] who had health insurance through a health benefit plan issued by Horizon to Monmouth Telecom ("the Monmouth Plan"), his employer.  (*Id.* ¶¶ 4, 5, 13.)  The Monmouth Plan, which is governed by ERISA, reimburses "covered services" that are "medically necessary and appropriate to diagnose or treat an illness or injury."  (*Id.* ¶ 14; *see also* D.E. 18-3 ("Monmouth Plan") at 119.)

Prior to the surgery, Adam M. executed an "Assignment of Benefits Form" for Center, stating: "I hereby instruct and direct . . . Insurance Company to pay [benefits] by check made out and mailed to" Center.  (D.E. 18-8 ("Assignment").)  It also provides, in capital letters, "THIS IS A DIRECT ASSIGNMENT OF MY RIGHTS AND BENEFITS UNDER THIS POLICY."  (*Id.*)

Center, as an out-of-network provider,[2] submitted a request for reimbursement to Horizon for charges related to the services of both doctors, but only Dr. Prasad's charges are at issue in the present litigation.  (Joint Statement of Undisputed Facts, ¶ 5.)  Center sought reimbursement in the amount of $22,030 for Dr. Prasad's services. [3]  (*Id.* ¶ 5.)  Horizon denied reimbursement, and Center appealed the decision using Horizon's internal review procedure.  (D.E. 18-15.)  Horizon denied the appeal stating in an explanation of benefits that "the service of an assistant surgeon is not required for this procedure."  (*Id.* ¶ 17 (internal quotation marks omitted); *see also* D.E. 18-16.)  Center continued to challenge Horizon's refusal to pay for Dr. Prasad's services through its internal appeals process, and Horizon continued to deny the claim.

---

[1] An alias is used to protect the anonymity of the insured.
[2] Both in-network and out-of-network providers receive reimbursement from Horizon based on a fee schedule in a member's plan.  (Joint Statement of Undisputed Facts, ¶¶ 8,9)  In-network providers accept the fixed fee as payment in full and may not balance bill the member for any additional costs above the fixed fee.  (*Id.* ¶ 8.)  Out-of-network providers may bill the member for any additional charges not covered by his or her insurance.  (*Id.* ¶ 9.)
[3] Center requested payment for Dr. Fox's services in the same amount as Dr. Prasad's, of which Horizon paid $8,593.50.  (Joint Statement of Undisputed Facts, ¶ 5; Compl., ¶ 10.)

While Center appealed, it had Adam M. execute a second assignment titled "Assignment of Benefits & Power of Attorney" dated July 18, 2012. (D.E. 18-13 ("Second Assignment").) In it, he assigned to Center all of his rights and benefits under his insurance contract for payment for services rendered to him, and authorized Center to file insurance claims with Horizon on his behalf for the services it provided. (*Id.*)

Ultimately, Center sued Horizon in state court, bringing a breach of contract claim in count 1, and in counts 2, 3, and 4, raising claims under ERISA, relying on the assignment it received from Adam M. to provide it with derivative standing to pursue the claims on his behalf. (*Id.*) The ERISA causes of action, more specifically, seek in count 2, the unpaid benefits for Dr. Prasad's services under § 502(a)(1)(B) of ERISA (*id.* ¶¶ 19-26.); in count 3, statutory penalties pursuant to § 502(c)(1)(B) for Horizon's alleged failure to provide it with required information when requested (*id.* ¶¶ 27-34.); and in count 4, an order stating, along with compensatory damages and other equitable relief, that Horizon failed to maintain claims procedures that comply with 29 C.F.R. § 2560.503-1. (*Id.* ¶¶ 35-43.)

Horizon removed the action, relying on this Court's federal question jurisdiction under 28 U.S.C. § 1331 because Center sought relief under ERISA's civil enforcement mechanism, 29 U.S.C. § 1132(a). (D.E. 1, ¶ 13.) Center subsequently dropped its breach of contract claim, conceding that it was preempted by ERISA. Following discovery, both sides moved for summary judgment. (D.E. 18; D.E. 21.) Center has withdrawn its claim for benefits under § 502(a)(1)(B) of ERISA in count 2. The Court addresses parties' motions for summary judgment on the remaining counts 3 and 4.

### III. Discussion

#### A. Standard of Review

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties agree that there are no disputed material facts, and because contract interpretation is question of law, whether the assignment encompasses the right to bring a claim under § 502(c)(1)(B) is ripe for summary judgment. *See Dome Petroleum Ltd. v. Emp'rs Mut. Ins. Co. of Wis.*, 767 F.2d 43, 47 (3d Cir. 1985).

#### B. Center's Voluntary Dismissal of Count 1 and Count 2

As already indicated, Center withdrew its claims in count 1 and count 2 and requests that they be voluntarily dismissed without prejudice. Horizon argues that Center is precluded from withdrawing those claims without prejudice because it answered Center's complaint and filed a motion for summary judgment. Under those circumstances, Horizon argues, Center is barred from obtaining a dismissal without prejudice, absent a court order or consent, pursuant to Fed. R. Civ. P. 41(a). Horizon naturally does not consent.

According to Fed. R. Civ. P. 41(a)(1)(A)(i), a "plaintiff may dismiss an *action* without a court order by filing a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment. Such a dismissal is deemed to be without prejudice unless stated otherwise." Fed. R. Civ. P. 41(a)(1)(B) (emphasis added). Contrary to Horizon's argument, Fed. R. Civ. P. 41's title, "Dismissal of Actions," and the use of the term "action" in the text, rather than "claim," makes clear that the rule "governs dismissal of *entire actions*, not of individual claims." *Hells Canyon Preservation Council v. U.S. Forest Serv.*, 403 F.3d 683, 687 (9th Cir. 2005); *see also Chan v. Cnty. of Lancaster*, 2013 WL 2412168, at *16 (E.D. Pa. June 4, 2013)

("[V]oluntary dismissal of some, but not all claims against a single defendants is not permitted under Rule 41(a)."). Instead, a plaintiff wishing to withdraw particular claims without prejudice must amend the complaint pursuant to Fed. R. Civ. P. 15(a). *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1106 (11th Cir. 2004).

Center did not seek leave of the Court to file an amended complaint under Fed. R. Civ. P. 15(a).[4] Rather, it withdraws count 1 and count 2 in its brief supporting its motion for summary judgment and says that it does so without prejudice. The Court is therefore faced with two options: it can dismiss those claims with prejudice, *see Gyda v. Temple Univ.*, 2000 WL 675722, at *4 (E.D. Pa. May 23, 2000) (dismissing plaintiff's claims with prejudice that were withdrawn via a summary judgment motion), or the Court can treat the request in Center's brief as a motion to amend its complaint. *See Chan*, 2013 WL 2412168, at *16 (construing plaintiff's request to withdraw certain claims in response to the defendants' summary judgment motion as a motion to amend the complaint).

Leave should be freely given to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). The Court finds, however, that justice does not require leave in this instance. In making its request to dismiss these particular claims, Center concedes that both lack merit. It implies that its § 502(a)(1)(B) claim is futile by stating that "it appears that Horizon maintains a Uniform Evidence-Based Medical Policy [("UEMP 2")] on surgical assistants." A "UEMP 2 includes a list of procedures memorialized by specific [Current Procedural Terminology ('CPT')] codes for which the services of an assistant surgeon are not considered medically necessary."[5]

---

[4] The time has passed for Center to amend its complaint as a matter of course without seeking leave of the Court. Fed. R. Civ. P. 15(a)(1)(A) provides that a party may amend a complaint as a matter of course within 21 days after its service. After that, the plaintiff must either obtain "the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).

[5] A CPT code is a coding system created by the American Medical Association, with each code representing a distinct medical service. (Joint Statement of Undisputed Facts, ¶ 11.) They are used by physicians to designate the service for which reimbursement is requested on a Health Insurance Claim Form. (*Id.* ¶ 11.)

(Joint Statement of Undisputed Facts, ¶ 15.) On the Health Insurance Claim Form for Dr. Prasad's services, Center sought payment for services designated by CPT codes 24140, 24359, and 24102 (D.E. 18-9), which Horizon lists as assistant surgeon services deemed not medically necessary in its UEMP 2. (D.E. 18-2 at 5.) Center's recognition that Horizon maintains UEMP 2 in withdrawing the claim indicates that it is aware that Horizon will not reimburse it for the services designated by the CPT codes for which billed. And, with count 1, Center has previously acknowledged that its breach of contract claim is preempted by ERISA. In short, Center all but concedes that count 2 is doomed and has already conceded that count 1 is legally impermissible. On that basis, both counts are dismissed with prejudice.

      **C.**     **Mootness of Count 3 and Count 4**

Horizon argues that because Center withdrew its claim for benefits under § 502(a)(1)(B) of ERISA, its remaining ERISA claims in count 3 and count 4 are moot. As indicated above, count 3 seeks statutory penalties pursuant to § 502(c)(1)(B) for Horizon's alleged failure to provide Center with required information when requested and count 4 seeks, along with compensatory damages and other equitable relief, an order stating that Horizon failed to maintain claims procedures that comply with 29 C.F.R. § 2560.503-1. Horizon's contention is that the parties' joint statement of undisputed facts framed the litigation's primary issue as Center's § 502(a)(1)(B) claim for payment of Dr. Prasad's bill and, since that is no longer at issue, the Court has no controversy to resolve. Horizon also argues that Center is precluded from pursuing statutory damages under § 502(c)(1)(B) without a related claim under § 502(a)(1)(B) because there can be no injury from a failed disclosure without a corresponding injury arising from the nonpayment of benefits.

Center's § 502(c)(1)(B) ERISA claim in count 3 is not moot. District courts within the Third Circuit have permitted plaintiffs to seek statutory penalties under § 502(c)(1)(B) without also bringing a claim for benefits pursuant to § 502(a)(1)(B). *See, e.g.*, *Colarusso v. Transcapital Fiscal Sys., Inc.*, 227 F. Supp. 2d 243, 249 (D.N.J. 2002) (Bissell, J.) (deciding only a claim brought under 29 U.S.C. § 1132(c)(1)(B) alleging that a plan administrator failed to provide information requested by the plaintiff regarding an ERISA-governed health plan); *Fox v. Law Offices of Shapiro & Kreisman*, 1998 WL 175865, at *5 (E.D. Pa. Apr. 13, 1998) (allowing the plaintiff to pursue a claim under § 502(c)(1)(B) of ERISA without also raising a claim for benefits under § 502(a)(1)(B)). Albeit the primary controversy was over benefits payable, the parties continue to take opposing positions on Horizon's obligations to disclose, keeping controversy alive. Horizon contends that it did not fail to provide Center anything that it is required to under ERISA, whereas Center maintains that Horizon refused to provide it with documents that ERISA mandates be disclosed, primarily a Summary Plan Description ("SPD") and the identification of the Plan Sponsor. And Center is not without injury because the injury for a § 502(c)(1)(B) is defined by the statute as the plan administrator's failure or refusal to supply information requested within 30 days as required. *See* 29 U.S.C. § 1132(c)(1)(B); *see also Colarusso*, 227 F. Supp. 2d at 263 (awarding the plaintiff $46,400.00 for the defendant's violation of § 502(c)(1)(B) ERISA when it failed to provide the plaintiff with the sought after information within 30 days).

Count 4, however, is moot. Center argues that Horizon's appeals process fails to comply with 29 C.F.R. 2560.503-1(g)(1)(iv) and 11 U.S.C. § 1133 because its October 5, 2012 appeal response did not contain the time limit for initiating an appeal. Having withdrawn its claim for benefits under ERISA in count 2, there is no reason for the Court to decide whether Horizon's appeal procedure complied with ERISA because any deviation from ERISA's regulations would

factor into the determination of whether Horizon's denial of Center's claim for reimbursement was arbitrary and capricious. *See Morrison v. PNC Fin. Servs. Grp., Inc.*, 2015 WL 1471865, at *8 (D.N.J. Mar. 31, 2015) (Irenas, J.) (finding that a failure to abide by ERISA's prescribed claim procedure bears consideration when determining whether a denial of benefits was arbitrary and capricious). And damages, which Center requests in count 4, are not available for a violation of 29 C.F.R. § 2560.503-1. *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144 (1985); *see also Syed v. Hercules, Inc.*, 214 F.3d 155, 162 (3d Cir. 2000) (Alito, J.) ("[T]he remedy for a violation of § 503 is to remand to the plan administrator so the claimant gets the benefit of a full and fair review."). Horizon's motion for summary judgment on count 4 is granted.

### D. Count 3 - Statutory Penalties Under § 502(c)(1)(B)

#### 1. Center's Derivative Standing

Horizon moves for summary judgment on count 3, contending that Center's assignment from Adam M. is insufficient to confer it with derivative standing to bring a cause of action under § 502(c)(1)(B) of ERISA. It asserts that in order to possess standing a healthcare provider must receive a "full, express, and irrevocable" assignment of a plan participant's complete bundle of ERISA rights. The Court disagrees.

The Third Circuit recently held that, "when a patient assigns payment of insurance benefits to a healthcare provider, that provider gains standing to sue for that payment under ERISA § 502(a)." *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 2015 WL 5295125, at *2 (3d Cir. 2015). The parties agree that, at a minimum, Adam M.'s assignment granted Center the right to receive payment of his insurance benefits under the Monmouth Plan, and as such, Center at least has standing to assert a claim for benefits under § 502(a)(1)(B) of ERISA.

Horizon, anticipating the Third Circuit's decision, argues that a healthcare provider may only pursue a claim for benefits under § 502(a)(1)(B) and not statutory penalties under §502(c)(1)(B).Center counters, asserting that a claim for benefits naturally encompasses the right to request documents relevant to the claims procedure and calculation of benefits..

In determining what claims a healthcare provider may bring under ERISA, courts look to the language of the assignment. *See Eden Surgical Ctr. v. B. Braun Med., Inc.*, 420 F. App'x 696, 697 (9th Cir. 2011) (holding that the plaintiff did not have a right to pursue statutory penalties under § 502(c)(1)(B) without also bringing a claim under § 502(a)(1)(B) because the assignment was limited to lawsuits to collect unpaid insurance benefits); *In re WellPoint, Inc. Out-of-Network Litig.*, 903 F. Supp. 2d 880, 896 (C.D. Cal. 2012) ("[C]ourts must look to the language of an ERISA assignment itself to determine the scope of the assigned claims."); *Biomed Pharm., Inc. v. Oxford Health Plans (N.Y.), Inc.*, 775 F. Supp. 2d 730, 736 (S.D.N.Y. 2011) (finding that an assignment did not afford a plaintiff the right to seek equitable relief because the assignment was limited to the right to pursue damages).

The first assignment executed by Adam M. directs Horizon to mail checks for Dr. Prasad's services directly to Center and states, in capital letters, that "THIS IS A DIRECT ASSIGNMENT OF MY RIGHTS AND BENEFITS UNDER THIS POLICY."[6] (Assignment.) If the assignment only directed Horizon to send checks to Center, the assignment would only include the right to receive the payment of insurance benefits. The language below that, however, states that Adam

---

[6] Center had Adam M. sign a second document that contains much broader language assigning it his rights under the Monmouth Plan on July 18, 2012, but it did so after Horizon claims to have begun reviewing the claim for benefits. (*See* Second Assignment.) The Court will not allow Center to use the second assignment as the basis for asserting derivative standing when Horizon could not consider it at the time it began to review its claim. *Cf. Loretto Hosp. v. Local 100-A Health & Welfare Fund*, No. 97-1353, 1998 WL 852878, at *1 (N.D. Ill. Dec. 4, 1998) (noting that the health fund could review the language of an assignment of benefits from a participant to a health care provider because it received it before reviewing the provider's appeal from the denial of benefits). In any event, the Court finds that first assignment confers Center with derivative standing to pursue its claims under § 502(c)(1)(B).

M. assigns his "RIGHTS AND BENEFITS" under the Monmouth Plan without any limiting language. The Monmouth Plan, being governed by ERISA, would provide him with the right to request documents and bring a claim under § 502(c)(1)(B) should he receive no response to a request. Under the broad assignment, so could Center. *See generally Mirza v. Ins. Adm'r of Am., Inc.*, 2015 WL 5024159 (3d Cir. 2015) (discussing whether a health plan complied with 29 C.F.R. § 2560.503-1 when sued by a healthcare provider, who was assigned any and all rights under an insurance policy). The Court therefore finds that Center has derivative standing to pursue its claim under § 502(c)(1)(B) of ERISA for statutory penalties.

### 2. The Claim for Statutory Penalties

Center seeks statutory penalties in the amount of $28,490.00 pursuant to § 502(c)(1)(B) of ERISA in its third count. (*See* Compl., ¶ 34.) Section 502(c)(1)(B) provides:

> Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by [Subchapter I of ERISA] to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $[110] a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c)(1)(B).[7]

Center argues that there is no genuine issue of material fact that Horizon failed to provide it with required information under § 502(c)(1)(B) of within 30 days of its request.[8] It contends

---

[7] Section 502(c)(1)(B) actually states that the daily penalty for an administrator's failure to respond to a request for information is up to $100 per day, but it was increased to $110 per day by regulation. *See* 29 C.F.R. § 2575.502c-1.

[8] In arguing that it is entitled to summary judgment on count 3, Center appears to raise a claim for breach of fiduciary duty for the first time, but a plaintiff is precluded from a raising a claim in a motion for summary judgment not brought in its complaint, and therefore, the Court will not consider these arguments. *See Josko v. New World Sys. Grp.*, No. 05-4013, 2006 WL 2524169, at *7 (D.N.J. Aug. 29, 2006) (Kugler, J.) ("[A] plaintiff may not raise new claims for the first time in response to a motion to dismiss or other dispositive motion."); *see also Hang On, Inc. v. City of Arlington*, 65 F.3d 1248, 1255-56 (5th Cir. 1995) (refusing to address a claim raised for first time in a response to a motion for summary judgment).

that Horizon never responded to its demand for the SPD or identification of the Plan Sponsor, which it made when initiating its second and third administrative appeals.[9] [D.E. 21-3, Exs. B, C.] According to Center, it suffered prejudice because it was unable "to identify the Plan Sponsor or to assess the application of the terms of the [SPD] prior to asserting its claim for benefits under" § 502(a)(1)(B) or whether it should even raise such a claim.

When receiving a request in writing, an administrator is required to furnish a participant or beneficiary with the most recent SPD, 29 U.S.C. §1024(b)(4), but nothing in Subchapter I of ERISA requires disclosure of the Plan Sponsor. *See Gorini v. AMP Inc.*, 94 F. App'x 913, 919 (3d Cir. 2004) (stating that under § 502(c)(1)(B) an administrator must disclose plan descriptions, SPDs, and annual reports). Horizon does not deny that it never gave Center a copy of the SPD.

But Horizon moves for summary judgment, asserting that Center has failed to demonstrate a basis for the Court to award the $28,490.00 penalty. The purpose of § 502(c)(1)(B) is "not to compensate participants with their injuries, but to punish noncompliance with ERISA." *Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 659 (4th Cir. 1996); *see also Daughtrey v. Honeywell, Inc.*, 3 F.2d 1488, 1494 (Oct. 7, 1993). The considerations a court should take into account in exercising its discretion to impose statutory penalties "include bad faith or intentional conduct on the part of the administrator, the length of the delay, the number of requests made and documents withheld, and the existence of any prejudice to the participant or beneficiary." *Romero*, 309 F.3d at 120 (citation and internal quotation marks omitted). Prejudice or damages are not a prerequisite to statutory damages because § 502(c)(1)(B) is intended to be punitive and the focus should be on

---

[9] Center also demanded several other documents and additional information, but it does not claim that it was prejudiced by Horizon's failure to provide them such that it would be entitled to statutory penalties under § 502(c)(1)(B) of ERISA. *See Romero v. SmithKline Beecham*, 309 F.3d 113, 120 (3d Cir. 2002) (stating that one of factors a court considers in determining whether to impose statutory penalties under § 502(c)(1)(B) is whether the plan participant or beneficiary suffered prejudice).

the motivations for the administrator's denial.  *See Fama v. Design Assistance Corp.*, 520 F. App'x 119, 123-124 (3d Cir. 2013) (affirming district court's award of $10.00 per day for violation of § 502(c)(1)(B) because of the minimal deterrent effect when defendant did not act in bad faith); *McCollum v. Life Ins. Co. of N. Am.*, 495 F. App'x 694, 707 (6th Cir. 2012) (finding that nominal penalties were sufficient under §502(c)(1)(B) for defendant's failure to respond to a request for information because there was no showing of malfeasance or bad faith); *Porcellini v. Strassheim Printing Co., Inc.*, 578 F. Supp. 605, 614 (E.D. Pa. 1983) ("If a plan administrator in good faith is unable to comply with a request for information within the thirty (30) day period, the assessment of the statutory penalty would not further the statute's purpose.").

In the circumstances here, the Court finds that statutory penalties are not warranted. Whether an assignment of the right to receive payment of insurance benefits conferred a health care provider with derivative standing under ERISA, has been a hotly contested issue in this district and nationally.  Prior to the Third Circuit's decision in favor of standing, some courts within this district had held that such an assignment was insufficient.  *See, e.g.*, *Franco v. Conn. Gen. Life Ins. Co.*, 818 F. Supp. 2d 792, 809 (D.N.J. 2011); *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 2014 WL 895407, at *2 (D.N.J. Mar. 6, 2014).  Horizon therefore did not act in bad faith in relying on those decisions and maintaining that Center received a limited assignment of the right to receive payment of insurance benefits. As it turned out, Horizon provided Center with the requested plan documents during the course of discovery in this litigation prior to the Circuit's ruling.  This is not the type of conduct that earned statutory penalties in reported decisions this Court has reviewed. *See Gorini*, 94 F. App'x at 920 (affirming award of statutory penalties when district court found that the defendant's conduct evidenced a pattern of "conscious choices to decline to disclose" and "recalcitrance," in the face of a request by the plan participant); *Boyadjian v. Cigna Cos.*, 973 F.

Supp. 500, 506 (D.N.J. 1997) (imposing statutory penalties against the defendant after it failed to provide any reason for denying the named beneficiary's request for documents).  In contrast, courts have declined to impose statutory penalties where bad faith was not evident.  *See McGowan v. NJR Serv. Corp.*, 423 F.3d 241, 250 (3d Cir. 2005) (affirming district court's decision not to impose statutory penalties because defendant acted in good faith believing it had no legal duty to provide the requested information), *abrogated on other grounds*, *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285 (2009); *Tucker v. Gen. Motors Ret. Program*, 949 F. Supp. 47, 56 (D. Mass. 1996) (declining to impose statutory penalties under § 502(c)(1)(B) because the defendant did not act in bad faith and because the plaintiff's claim for benefits would have been unsuccessful even if the information was disclosed).  Horizon's conduct falls within the latter category, and the Court grant's its motion for summary judgment on count 3.

**IV.     Conclusion**

Horizon's motion for summary judgment on counts 3 and 4 of the complaint is granted and Center's motion for summary judgment on those counts is denied.  An appropriate order will be entered.

Dated:  September 30, 2015

/s/ Katharine S. Hayden_____
Katharine S. Hayden, U.S.D.J.